Joseph Stoffield v. Commissioner.
Stoffield v. Commissioner
Docket Nos. 23522, 33428.
United States Tax Court
1952 Tax Ct. Memo LEXIS 201; 11 T.C.M. (CCH) 550; T.C.M. (RIA) 52161; May 29, 1952
*201 Charles L. Mullen, Esq., 808 N. Third St., Milwaukee, Wis., and Mark M. Camp, Esq., for the petitioner. Harold H. Hart, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies and additions thereto under sections 293 (b) and 294 (d) (2) as follows: Deficiency
293(b)
294(d)(2)
1942
$ 745.64
$ 372.82
1943
1,325.45
641.46
$10.06
1944
2,580.39
1,411.84
1945
11,894.56
5,947.28
1946
23,286.11
11,643.06
1947
14,412.73
7,206.37
875.08 The Commissioner's determinations for 1942, 1943 and 1945 were made against Joseph F. and Julia Stoffield, and although Joseph states in his petition at Docket No. 23522 covering those years that he made the petition on behalf of himself and his wife, nevertheless, he did not include her name in the caption and she did not sign, verify or otherwise indicate that she joined in the petition. The determination as to the other years was against Joseph alone and he is regarded as the only petitioner in each proceeding. Although the petitioner has not made any assignment of error with respect to the additions to the tax, nevertheless, the Commissioner *202 has alleged facts in his answer to support his determination of fraud. Those allegations have been denied by the petitioner. So one issue presented for decision is whether all or some part of each deficiency is due to fraud with intent to evade tax. The petitioner at Docket No. 23522 states in his pleadings that he agrees there are some deficiencies but he has insufficient information to allege the amount thereof. His prayer in that this Court "determine that the amount of the above deficiencies are incorrect and arbitrary, and prays for a correction thereof." At the other docket number he alleges that "The Treasury Department agents used the 'Net Worth' method inaccurately and computed the taxpayer's income upon an arbitrary, capricious and incorrect basis." He also alleges at that docket number that his wife invested money and worked in his dry cleaning business without compensation and "She has always maintained that, because of her understanding at the time of the said investment and her continued efforts in the business, she was a partner with a one-half interest in said business." The above statement indicates the only issues for decision. Findings of Fact The petitioner *203 is an individual who resided during the taxable years in Milwaukee, Wisconsin. He, as sole proprietor, carried on a dry cleaning business there during all of the taxable years except for the last five months of 1947. The petitioner received money from the sale of new machinery, hangers and bags, and from rents during the taxable years. Julia Stoffield is the wife of the petitioner. They were married in 1931 at which time Julia turned over to the petitioner about $3,000, made up of $2,000 which she had saved from her own earnings and $1,000 received in connection with their wedding. The petitioner was then carrying on a cleaning business known as Peoples. The record does not show what the petitioner did with the money. She never had any understanding with the petitioner, written, oral, or implied, that she was a partner with him in the conduct of his business. Julia, at all times material hereto, worked in the business of the petitioner waiting on customers, spotting and packing. She received no wages. She never saw the books and knew nothing about the books or the financial affairs of the business. She never drew any money out of the business. The only money she received was a weekly *204 allowance for living expenses of herself and the petitioner. The petitioner employed a firm of certified public accountants to keep books for his business and to prepare his income tax returns for the taxable years. They computed his gross income from deposits made in his bank accounts and used his check stubs to determine his expenditures. The petitioner knew that his bank deposits and check stubs were the only source of information from which his books and tax returns were prepared. The accountants told him that he should deposit all business receipts in his bank accounts and make all disbursements by check so that his returns could be prepared properly. Nevertheless, he signed his returns prepared by his accountants for the taxable years knowing that the return for each year failed to report a large part of his income for that year. The petitioner during each of the taxable years withdrew a large amount of money in cash from the receipts of his business, did not deposit the cash in his bank account, took some of it to a bank where he obtained large bills for it, put the bills in envelopes, and put the envelopes in his safe deposit box. He also retained some of the money and *205 carried large amounts of it on his person at times. He did not disclose this practice of withdrawing large sums of money from the business to his accountants, to his wife, or to anyone until after the taxable years. The petitioner failed to keep complete and accurate records of his business, and the correct amount of his income subject to tax could not be computed for any of the taxable years from the records which he maintained. The petitioner signed and swore to a transcript of his testimony given before a special agent and a deputy collector of the Bureau of Internal Revenue dated June 16, 1948, in which he explained that approximately $56,000 which he then had in his safety deposit box represented about $7,000 withdrawn from the business in 1944, about $18,000 withdrawn from the business in 1945, about $22,000 withdrawn from the business in 1946, and about $9,000 withdrawn from the business in 1947, all of which was receipts of his business but none of which was shown on his books or reported in his returns. The petitioner gave the representatives of the Bureau of Internal Revenue investigating his tax liability for the taxable years a statement sworn to by him on June 17, 1948, in *206 which he explained that the $56,000 which he had mentioned in his testimony on the previous day was made up of approximately $10,000 in United States Savings Bonds and $46,000 in currency, and that he had brought to them and they had counted in his presence on June 17, 1948, $39,150 representing currency in addition to that previously mentioned, all of which he had secreted in his safe deposit box after having taken it in the form of cash from the receipts of his business. He further stated that with the disclosure of this additional amount he had disclosed everything in the way of income which he had suppressed. The $39,150 was shown to the representatives of the Bureau of Internal Revenue on that day. It was contained in five envelopes and consisted of 10 $20 bills, 23 $50 bills, 243 $100 bills, 9 $500 bills, and 9 $1,000 bills. The petitioner's returns for the taxable years were filed with the collector of internal revenue for the district of Wisconsin. The return for 1942 was in the name of Joseph and Irene [sic] Stoffield and was signed by the petitioner. The 1943 return was in the name of Joseph and Julia and was signed by both of them. The 1944 return was filed in the name *207 of Joseph and Julian [sic] and was signed by Joseph. A declaration of estimated tax for 1944 signed by Joseph and Julia was filed on January 15, 1945. The 1945 return was filed in the name of Joseph and Julia and was signed by both. The 1946 and 1947 returns were filed in the name of Joseph, were signed by him, and purported to show all of the income from the dry cleaning business for the year of the return. Julia did not file a separate original return for any of the taxable years. Separate amended returns for each of the taxable years were prepared by a certified public accountant, those for the petitioner were signed by him, and those for Julia were signed by her, and the returns, together with the excess of the tax shown on those returns over that shown on the original returns, were received by a branch of the Bureau of Internal Revenue for the district of Wisconsin on July 7, 1950. The Commissioner, after making all reasonable efforts to do so, was unable to determine the correct or even the approximate income of the petitioner from his books, his records, his returns, or from any combination thereof. He determined the net income for each year on the basis of the increase *208 in the petitioner's net worth for each year. His determination of the petitioner's income on that basis was not arbitrary or capricious but was a reasonable method to adopt under all of the circumstances which confronted him. It was adopted only after other methods had failed to disclose the approximate income of the petitioner for any year. The net worth statement upon which the deficiencies were determined was shown to the petitioner in the presence of an attorney retained by him, and on it is the following statement signed and sworn to by the petitioner: "I have examined the above statement and related schedules in detail and solemnly declare such statement to be true and correct to the best of my knowledge and belief." The following table shows the adjusted gross income * or loss shown on the original returns, the total adjusted gross income * of Joseph and Julia shown on the amended returns, and the net income for each year determined by the Commissioner: Original
Amended
Determined by
return
return
Commissioner
1942
$1,799.50
$ 5,137.20
$ 5,137.20
1943
2,244.75
6,946.78
6,946.78
1944
(727.33)
5,391.65
10,645.05
1945
1,507.25
11,528.70
27,703.94
1946
4,354.15
34,658.09
48,636.12
1947
3,806.35
31,000.50
34,858.68
*209 A part of the deficiency for each year is due to fraud with intent to evade tax. Opinion MURDOCK, Judge: The petitioner has the burden of proof to show that one or more of the deficiencies determined by the Commissioner was in excess of the tax due. He has not shown that his income or his tax for any taxable year was less than that determined by the Commissioner. Indeed, he has made little, if any effort to do that. He contends that the determination of the Commissioner was arbitrary and capricious and, therefore, the burden fell upon the Commissioner to prove the correct amount of the income and tax liability of the petitioner for each year. The evidence shows that the petitioner's conscience began to bother him not later than the spring of 1948 at which time he told his wife of his failure to disclose income which he should have reported. They went for advice to a person, apparently a priest, who advised them to see a man named Cwiklinski, who had formerly been an employee of the Bureau of Internal Revenue. They consulted *210 that man and he apparently advised the voluntary disclosure in order to avoid criminal prosecution for fraud. He contacted a representative of the Bureau of Internal Revenue on or about March 23, 1948, and advised him that the petitioner had concealed about $56,000 of business income during 1944 to 1947 which he had decided to disclose. He represented at that time that the petitioner was too ill to see the Bureau representatives but they later saw him and he confirmed the disclosure. Additional conferences were held and he made a further disclosure of the $39,150. The representatives of the Bureau were not satisfied with these disclosures and attempted to find out in other ways what the true income of the petitioner had been for the years 1942 through 1947. They learned that the books kept by the certified public accountant were incomplete, inadequate, and incorrect records of the actual business transactions. They found receipts showing retail sales for some but not many of the months of the taxable years, and they obtained some information in regard to wholesale sales from the customers. Their efforts to determine the correct income from those and similar sources were unsuccessful *211 and they finally resorted to the increase in net worth method. Counsel for the petitioner seems to contend that the petitioner was in such a nervous or confused mental condition from prior to March 1948 until the determination of the deficiencies and perhaps even to the present time, but particularly during the investigation by the representatives of the Bureau of Internal Revenue, as to make his sworn statements and other disclosures to them of no value and that in some way tends to make the determination of the Commissioner arbitrary and capricious. The record leaves no doubt that the petitioner, with the assistance of his wife and Cwiklinski, produced and displayed to the representatives of the Commissioner the $39,150 which he said he concealed. It is not contended that he did not have the $56,000 which he also described to them. No doubt the petitioner was nervous. He had reason to be. But no nervousness or lack of mental capacity on his part had any effect upon the determination of the Commissioner. Counsel for the petitioner also complains bitterly of the participation by Cwiklinski in the conferences with and the investigations by the representatives of the Bureau. The Court *212 is unable to see wherein the activities of that man led in any way to error on the part of the Commissioner in his determination or tended to make that determination in any way arbitrary or capricious. The Court has carefully considered the entire and rather lengthy argument of counsel for the petitioner in support of his contention that the determination was arbitrary and capricious but finds it unpersuasive. It appears, on the contrary, that the Commissioner's representatives did the best they could under the circumstances, that they did their best to determine the correct net income of the petitioner for each taxable year, and that there is no error, so far as this record shows, in the net worth figures which they discovered and used. The petitioner's counsel argues that the petitioner and his wife were equal partners in the business during all of the taxable years although this issue is pleaded only as to 1944, 1946 and 1947. The returns filed for 1942, 1943, 1944 and 1945 purported to be joint returns and some of them were signed by the petitioner and Julia. They were all false and fraudulent with intent to evade tax. Taxpayers filing such returns and later, after the Commissioner *213 has determined large deficiencies and additions for fraud, discovering that it would be to their advantage to file separate returns, do not have the right or privilege to file separate amended returns. Walter M. Ferguson, Jr., 14 T.C. 846, appeal dismissed - Fed. (2d) -; Rose v. Grant, 39 Fed. (2d) 340, dismissed 283 U.S. 867. Thus, it would not make any difference in the tax liability of the petitioner for the first four years whether they were partners or whether they were not. Likewise, the allowance of compensation for Julia's services during that period would not make any difference because if it were to be deducted by the petitioner it would have to be included in the joint return as income of Julia. The petitioner filed separate individual returns for 1946 and 1947 and purported to include in those returns all of the income of himself and his wife. However, if it appeared that a bona fide partnership existed so that a part of the income for those years actually belonged to his wife, his liability might have to be separately determined. The petitioner never in his testimony or in his pleadings indicated that he ever consciously or unconsciously *214 intended to have his wife as a partner with him in his business during the taxable years. There is a great deal of evidence to indicate that no such partnership was ever intended or was ever carried on. Julia testified, "I had $2,000 of my own, and, when we got married, we got $1,000 for our wedding gift and I turned that into him." Julia worked in the business at all times material hereto without receiving wages, salary, or a part of the profits. An equal partnership can not be constructed out of such meager evidence in view of the abundance of other evidence that there was no partnership. The Commissioner has the burden of proof on the fraud issue and if the petitioner has not admitted fraud as to each separate year, nevertheless, the Commissioner has sustained his burden by clear and convincing evidence. Decisions will be entered for the respondent. Footnotes
*. Itemized deductions were not shown except on the original returns for 1942 and 1943 so net income is shown only in the right hand column of the table.↩